## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| JOSEPH MICHAEL SMART JR, | **Case No.:** |
| Plaintiff, | |
| | **COMPLAINT AND** |
| | **DEMAND FOR JURY TRIAL** |
| v. | |
| | |
| SANTANDER CONSUMER USA | 1. **FCRA, 15 U.S.C. § 1681** *et seq.* |
| INC. d/b/a CHRYSLER CAPITAL, | |
| EXPERIAN INFORMATION | |
| SOLUTIONS, INC.; AND EQUIFAX | |
| INFORMATION SERVICES, LLC, | |
| | |
| Defendants. | |

Plaintiff Joseph Michael Smart Jr. ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Santander Consumer USA, Inc. d/b/a Chrysler Capital ("Chrysler Capital") and Defendants Experian Information Solutions, Inc. ("Experian") and Equifax Information Services, LLC ("Equifax") (referenced collectively as "CRA Defendants").

## I.     INTRODUCTION

1.     Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the CRA Defendants.  Plaintiff contends

the CRA Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's "consumer reports" as defined in 15 U.S.C. § 1681a(d), and consequently reported inaccurate information about Plaintiff.  "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2.     Plaintiff's Complaint also alleges violations of the FCRA against Defendant Chrysler Capital for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's dispute from Experian.

## II.     <u>JURISDICTION AND VENUE</u>

3.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the Fair Credit Reporting Act, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

4.     Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### III.   PARTIES

5.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

6.     Plaintiff is a natural person who resides in the city of Lithonia, Dekalb County, Georgia.

7.     Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

8.     Defendant Chrysler Capital is a financial institution engaged in the business of giving credit and collecting debt. Chrysler Capital is also a *furnisher*, as contemplated in 15 U.S.C. § 1681s-2. Upon information and belief, Chrysler Capital is regularly engaged in the business of furnishing credit information to the consumer reporting agencies. Chrysler Capital is headquartered at 1601 Elm St., Suite 800, Dallas, TX 75201 and can be served through its registered agent C T Corporation System located at 289 S Culver St, Lawrenceville, GA 30046-4805.

9.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 USC § 1681a(d), to third parties. Experian's principal place of business is located at 475

Anton Boulevard, Costa Mesa, California 92626.

10.     Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309.

11.     During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Georgia and conducted business in the State of Georgia on a routine and systematic basis.

12.     The CRA Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. The CRA Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

13.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors,

assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

14.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

## IV.   FACTUAL BACKGROUND

15.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

16.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

17.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

18.     The FCRA is intended to ensure consumer reporting agencies ("CRAs") exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

19.     The CRA Defendants, two of the three major consumer reporting

agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, regularly publish/es and distribute/s credit information about Plaintiff and other consumers through the sale of consumer reports.

20.     The CRA Defendants regularly purchase and obtain consumer bankruptcy information to include in consumer reports.

21.     The CRA Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

22.     The CRA Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRA Defendants by furnishers, and other information is independently gathered by the CRA Defendants

from third party providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

23.    The CRA Defendants regularly seek out and procure consumer bankruptcy filing and discharge information, with the intention of including it in the consumer reports the CRA Defendants sell to third parties for a profit.

24.    The diligence the CRA Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in the CRA Defendants' subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

25.    The CRA Defendants' unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

26.    The CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

27.    The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like the CRA Defendants) to make lending decisions.

28.    Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret

the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in the CRA Defendants' reports.

29.    The information the CRA Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

30.    FICO Scores are calculated using information contained in the CRA Defendants' consumer reports.

31.    FICO and other third-party algorithms use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of their creditworthiness.

32.    FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

(a) "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent

accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

(b) The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

33.    Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

34.    DTI compares the total amount a consumer owes to the total amount a consumer earns.

35.    The CRA Defendants regularly provide information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by the CRA Defendants.

36.    A consumer's income, however, is not included in their consumer report; only their "amount of debt" is.

37.    The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest rates and

lower credit limits).

38.    A consumer who has obtained a bankruptcy discharge and has an account that is inaccurately reporting a negative payment for the month of their discharge suffers greater harm than if that account were accurately reporting without the negative payment.

39.    A consumer who has obtained a bankruptcy discharge and has an account that is inaccurately reporting with a payment status of "charge-off" without any indication that such account was discharged in bankruptcy suffers greater harm than if that account were accurately reporting as included in bankruptcy.

40.    The CRA Defendants are aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

41.    However, the CRA Defendants also know that it is rare for a pre-petition debt to be reaffirmed or successfully challenged in an adversary proceeding.

42.    Further, the CRA Defendants know that if reaffirmation agreements or adversary proceedings exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

43.    Additionally, information indicating whether a specific debt was

reaffirmed or successfully challenged through an adversary proceeding (rather than discharged), can be easily retrieved from the same sources from which the CRA Defendants independently obtain consumer bankruptcy case information.

44.    The CRA Defendants also receive information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

45.    Despite the availability of accurate consumer information, the CRA Defendants regularly report inaccurate information about accounts after consumers receive a Discharge Order.

46.    The CRA Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

47.    Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, the CRA Defendants frequently report information regarding pre-bankruptcy debts based on information they know is incomplete or inaccurate.

48.    After a bankruptcy is discharged, the CRA Defendants also routinely rely on furnisher data, even though the furnisher has ceased updating an account

upon the filing of a bankruptcy and the account information is "stale."

49.     Consequently, the CRA Defendants regularly publish consumer information that conflicts with information: provided by data furnishers to the CRA Defendants, already included in the CRA Defendants' credit files, contained in public records that the CRA Defendants regularly access, or sourced through the CRA Defendants' independent and voluntary efforts.

50.     The CRA Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681e(b).

51.     The CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in the CRA Defendants' own files.

52.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the CRA Defendants for their inaccurate credit reporting following a Chapter 7 discharge.

53.     Thus, the CRA Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures. More specifically, the CRA Defendants are on continued notice that their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

*Allegations Specific to Credit Reporting of Plaintiff*

54.     Plaintiff filed a "no asset" Chapter 7 Bankruptcy on or about April 9, 2019, in the United States Bankruptcy Court for the Northern District of Georgia (Atlanta) (Case No. 19-55687-pwb).

55.     Plaintiff received an Order of Discharge on or about July 22, 2019.

56.     Thereafter, Plaintiff was not personally liable for any of their dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

57.     Upon information and belief, the CRA Defendants each prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

58.     The CRA Defendants obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by the CRA Defendants in Plaintiff's consumer reports.

59.     In the Public Records section of Plaintiff's consumer reports, Experian included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

60.    In the Public Records section of Plaintiff's consumer reports, Equifax included the bankruptcy case number, court, and filing date.

61.    Equifax failed to include the fact that Plaintiff's bankruptcy had been discharged in the Public Records section of Plaintiff's consumer report.

62.    The CRA Defendants also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update. The CRA Defendants are aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

63.    Defendant Equifax should have reported Plaintiff's bankruptcy filing information in the public records section of Plaintiff's consumer reports.

64.    The CRA Defendants should have reported **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy and/or with a zero-dollar balance

### *Equifax's Inaccurate Reporting*

65.    Equifax inaccurately reported Plaintiff's Chrysler Capital Account (the

"Account 1"), starting with 300001 and opened on December 18, 2014, which predated Plaintiff's bankruptcy filing.

66.    Plaintiff surrendered the vehicle, and Account 1 was discharged in Plaintiff's bankruptcy on or about July 22, 2019.  Therefore, Account 1 should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

67.    However, Equifax inaccurately reported the discharged Account 1 with a status of charge off on Plaintiff's consumer report dated September 7, 2021, when the Account was discharged.

68.    The status of "Charge-Off" in the consumer credit reporting industry means that a debt may still be owed, especially whereas here, the tradelines do not include bankruptcy coding such as included in and/or discharged in bankruptcy, or the tradeline indicates there is a balance and/or past due balance owed on the account before or after the "charge-off."

69.    The national consumer reporting agencies specifically acknowledge that a "charge-off" generally means consumers are still legally responsible for paying the debt.

70.    According to Experian, creditors typically charge off accounts after they have been delinquent, *i.e.*, gone without any scheduled payments for six months, a charge-off does not mean your debt is forgiven, you are still legally

responsible for repaying the outstanding amount.

71.    According to Equifax, a charge-off means the lender has written the account off as a loss and the account is closed to future charges, the time frame is generally between 120 and 180 days after you become delinquent, and a charge-off does not mean that you no longer owe the debt, you are still legally obligated to pay the debt.

72.    Equifax did not indicate that Plaintiff had received a bankruptcy discharge.

73.    The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on Plaintiff's Equifax consumer reports.

74.    Equifax also reported Plaintiff's bankruptcy information on the Public Records section of Plaintiff's report, such as bankruptcy case number, court, and filing date.

75.    However, Equifax failed to report Plaintiff's bankruptcy discharge even though Equifax had all the correct personal information for Plaintiff in its database and already had some information regarding Plaintiff's bankruptcy.

76.    Notably, both Experian and Trans Union accurately reported Plaintiff's public record bankruptcy discharged based on the same information.

77.    Additionally, furnishers reported Plaintiff's discharge information to

Equifax when updating accounts.

78.    In fact, Equifax accurately reported at least four (4) pre-petition accounts as "included in bankruptcy."

79.    Equifax knew or should have known that Plaintiff's bankruptcy was discharged.

80.    Moreover, on or about December 28, 2021, Plaintiff sent a certified letter to Equifax disputing its inaccurate reporting of Plaintiff's information.

81.    The letter specifically advised that Plaintiff had surrendered the vehicle and that Account 1 had been included and discharged in Plaintiff's bankruptcy and that Plaintiff received his bankruptcy discharge in 2019.

82.    Based on the tracking receipt, Equifax received Plaintiff's dispute letter.

83.    On or about January 5, 2022, Equifax also responded to Plaintiff's dispute stating it had corrected Account 1 to reflect that it had been included in bankruptcy. However, Equifax did not update Plaintiff's consumer file to include Plaintiff's bankruptcy discharge on the Public Records section of Plaintiff's consumer reports.

84.    Equifax did not fully investigate Plaintiff's dispute and update Plaintiff's bankruptcy information, despite possessing information indicating

17

Plaintiff received a bankruptcy discharge, and/or the ability to independently verify this information through the sources it usually receives consumer bankruptcy information.

85.    Equifax's reporting was patently false and materially misleading, as Plaintiff had received a discharge.

*Experian's Inaccurate Reporting of Account 1*

86.    Experian failed to report **all** of Plaintiff's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy and with a zero-dollar balance.

87.    Experian inaccurately reported Account 1, which was opened prior to Plaintiff's bankruptcy.

88.    Plaintiff surrendered the vehicle, and Account 1 was discharged in Plaintiff's bankruptcy on or about July 22, 2019.  Therefore, the Account should have been reported as discharged in bankruptcy, and with a zero-dollar balance.

89.    However, Experian also inaccurately reported the discharged Account 1 as having $17,967 written off (charge off) on Plaintiff's consumer report dated July 9, 2021.

90.    On or about December 28, 2021, Plaintiff sent a certified letter to Experian disputing its inaccurate reporting of Account 1.

91.     The letter specifically advised that Plaintiff had surrendered the vehicle and that Account 1 had been included and discharged in Plaintiff's bankruptcy.

92.     Based on the tracking receipt, Experian received Plaintiff's dispute letter.

93.     Experian did not respond to Plaintiff's dispute letter.

94.     Following Plaintiff's dispute letter, Experian continued to report Account 1 with an inaccurate payment status of "charge-off."

95.     Experian did not indicate that Account 1 was discharged in Plaintiff's bankruptcy, despite having actual notice of the discharge from Plaintiff.

96.     Upon information and belief, Experian forwarded Plaintiff's disputes to Chrysler Capital within 5 business days of receipt.

97.     Experian did not investigate Plaintiff's dispute, and pursuant to its unreasonable procedures, merely forwarded an automated dispute form to Chrysler Capital, despite possessing information indicating Account 1 was discharged, and/or the ability to independently verify the discharge through the same sources it receives consumer bankruptcy information.

98.     Rather than perform a reasonable investigation based on Plaintiff's dispute, readily available public records, and information known by Experian, Experian merely parroted information furnished by Chrysler Capital despite being

aware that the information was factually inaccurate and conflicted with information known by Experian.

99.   Chrysler Capital failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Experian.

100.   Chrysler Capital failed, among other things, to review all relevant information regarding the dispute or ignored this information. Consequently, Chrysler Capital continued to furnish inaccurate data to Experian despite having knowledge of Plaintiff's dispute and otherwise possessing information from which Chrysler Capital should have reported accurate information about Account 1.

101.   Experian's reporting was patently false and materially misleading, as Plaintiff's Account1 had been discharged in Plaintiff's bankruptcy.

*Experian's Inaccurate Reporting of Account 2*

102.   Experian also inaccurately reported Plaintiff's WebBank/Fingerhut account ("Account 2"), starting with 636992 and opened on November 9, 2014, which predated Plaintiff's bankruptcy filing.

103.   The Account was included in Plaintiff's bankruptcy and discharged on or around July 22, 2019. Therefore, the Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance, and without any late payments following Plaintiff's bankruptcy filing.

104.  However, Experian inaccurately reported in the Payment History section of Account 2 that Plaintiff had a "Negative" payment in July 2019.

105.  Experian included such a negative payment report on the month of Plaintiff's bankruptcy discharge despite reporting Account 2 as discharged in Plaintiff's bankruptcy.

106.  Notably, the other national consumer reporting agencies, Equifax and Trans Union did not inaccurately report Account 2 like Experian.

107.  WebBank/Fingerhut furnished information to Experian that indicated Plaintiff's debt was discharged in bankruptcy in July 2019 and did not indicate Plaintiff had any negative payments after his bankruptcy filing.

108.  Alternatively, Experian knew from past experiences that WebBank/Fingerhut furnished inaccurate information regarding discharged debts or, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

109.  Experian also knows that it should not report late or negative payment status for an account included in bankruptcy after the consumer has filed for bankruptcy.

110.  Nevertheless, Experian blindly relied on the information provided by WebBank/Fingerhut even though this information conflicted with or was

contradicted by information contained in Experian's records, as well as Experian's knowledge regarding Plaintiff's bankruptcy and discharge.

111.   Therefore, Experian's reliance on the furnisher, WebBank/Fingerhut, was unreasonable.

112.   Experian inaccurately reported a negative payment history on Account2.

113.   Experian's reporting of the Account is patently false/incorrect and materially misleading.

<em>Plaintiff's Damages</em>

114.   Upon information and belief, had Defendants accurately reported Plaintiff's information, Plaintiff's credit scores and/or DTI would have been better.

115.   After Plaintiff's bankruptcy discharge, Plaintiff applied for a loan with OneMain and was approved at less than favorable rates due to the inaccurate reporting of the Account by Defendants.

116.   After Plaintiff's bankruptcy discharge, Plaintiff also applied for a credit card with Credit One Bank and was approved at less than favorable rates and lower credit limit due to the inaccurate reporting of the Account by Defendants.

117.   After Plaintiff's bankruptcy discharge, Plaintiff also applied for various auto loan and was approved for an auto loan with Wells Fargo Dealer Services at

less than favorable rates due to the inaccurate reporting of the Account by Defendants.

118.   Experian's inaccurate reporting of Account 1 and Account 2, along with additional information belonging to Plaintiff, was published to 700CR/Conyers Nissan, Ally Financial, Capital One Auto Finance, Continental Finance, Credit One Bank, Discover Financial Services, Global Lending Service, NCCINC/Nissan of Union, OneMain, Santander Consumer, US Small Business Administration, and Wells Fargo Credit Services by Experian during the process of Plaintiff's credit applications.

119.   Equifax's inaccurate reporting of Plaintiff's information, along with additional information belonging to Plaintiff, was published to C&F Finance Company, Automobile Acceptance-Indirect, Nissan Union City LLC, Wells Fargo Dealer Services, Conyers Nissan, NMAC, Capital One, JPMorgan Chase Bank Auto Finance, Ally Financial, Global Lending Services, Inc., and OneMain by Equifax during the process of Plaintiff's credit applications.

120.   As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

121.   Additionally, Plaintiff suffers interference with daily activities, as well

as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational harm, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## V.   COUNT I
### Equifax
### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

122.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

123.   The FCRA requires CRAs, like Equifax, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

124.   Equifax negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of the information it reported about Plaintiff after Plaintiff's bankruptcy.

125.   Equifax independently sought information about Plaintiff's bankruptcy and voluntarily reported this information in Plaintiff's consumer reports.

126.   When Equifax procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy and its effect(s) with maximal accuracy.

127.   Equifax also received notice of Plaintiff's bankruptcy through public

records, independent collection of consumer information directly obtained by Equifax through sources of consumer information such as Lexis Nexis, Equifax's own files, and information provided by data furnishers.

128.   Equifax had actual knowledge of Plaintiff's bankruptcy, since Equifax reported Plaintiff's bankruptcy information on Plaintiff's consumer reports, such as Plaintiff's bankruptcy case number, court, and filing date.

129.   However, Equifax failed to report Plaintiff's discharge on Plaintiff's consumer reports.

130.   Equifax possessed information that indicated Plaintiff had received a bankruptcy discharge.

131.   Information concerning bankruptcy discharge is also reasonably available from the same sources of consumer bankruptcy information Equifax procures.

132.   Equifax's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

133.   Equifax's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

134.   Equifax   knows   the   information   it   reports   about   consumers'

bankruptcies is often inconsistent with public records and its own files, including other furnishers that report to Equifax that the consumer bankruptcy has been discharged.

135.   But despite knowledge of Plaintiff's bankruptcy, Equifax inaccurately reported the Account 1, which predated Plaintiff's Chapter 7 Bankruptcy, with a status other than "discharged in bankruptcy" and a balance greater than zero.

136.   Equifax knew or should have known of its obligation under the FCRA.

137.   These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving Equifax from which it is on notice of its unreasonable procedures concerning the reporting of consumers' bankruptcy discharges.

138.   Equifax knew or should have known that the effect of a Discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

139.   Equifax knew or should have known of its obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

140.   Additionally, Equifax possesses or could easily obtain substantial

written materials that detail CRAs' duties and obligations under the FCRA, including those that apply when a consumer files for Chapter 7 Bankruptcy.

141.   Equifax knows that discharged debts should not be reported as late, past due, charge off, or with outstanding balances after the discharge date, and instead should be reported with a zero-dollar balance.

142.   Yet in this case, Equifax reported the Account 1, which predated Plaintiff's bankruptcy, with a balance owed after Plaintiff's discharge (instead of a zero-dollar balance).

143.   Despite knowledge of these legal obligations, Equifax willfully and consciously breached its duties under the FCRA.  Accordingly, Equifax Defendant deprived Plaintiff of his rights under the FCRA.

144.   Equifax violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports.

145.   Equifax also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Equifax knew or should have known the information it was reporting is inaccurate, or otherwise contradicted by information known by Equifax, reported to Equifax, or reasonably available to Equifax.

146.   Even after Plaintiff notified Equifax of the inaccurate information it

included in Plaintiff's credit file, Equifax still failed to report the fact that Plaintiff had obtained a discharge on the Public Records section of Plaintiff's consumer reports, despite notice that Plaintiff had received the discharge, and the ability to independently confirm the information detailed in Plaintiff's dispute.

147.   Equifax therefore further failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to independently verify that Plaintiff received a bankruptcy discharge following Plaintiff's dispute, which information is reasonably available from the same sources Equifax usually procures consumer bankruptcy information.

148.   Equifax's violations of 15 U.S.C. § 1681e(b) were willful.

149.   Alternatively, Equifax's violations of 15 U.S.C. § 1681e(b) were negligent.

150.   When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

151.   When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider

all relevant information submitted by the consumer."

152.   Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

153.   Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Equifax violated the FCRA by failing to perform a reasonable reinvestigation of the disputed information even after Plaintiff notified it of its inaccurate reporting of Plaintiff's bankruptcy information.

154.   Equifax's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

> i. Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.
>
> ii. Failing to consider all relevant information while investigating Plaintiff's dispute.
>
> iii. Failing to include all relevant information when notifying Chrysler Capital of Plaintiff's dispute.

155.   Equifax's acts, as described above, were done willfully and knowingly; or, alternatively were negligent.

156.   Equifax's inaccurate reporting damaged Plaintiff's creditworthiness.

157.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Equifax failing to report Plaintiff's bankruptcy discharge on Plaintiff's consumer reports.

158.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, loss of sleep, shock, embarrassment, and anxiety.

159.   Equifax is a direct and proximate cause of Plaintiff's damages.

160.   Equifax is a substantial factor in Plaintiff's damages.

161.   Therefore, Equifax is individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.   COUNT II
### Experian
### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

162.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

163.   The FCRA requires CRAs, like Experian, to maintain and follow

reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

164.  Experian negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of the information it reported about Plaintiff's pre-bankruptcy debts after Plaintiff received a Discharge Order.

165.  Additionally, Experian negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to report accurate information when placed on notice that the information Experian is reporting is inaccurate, and/or otherwise contradicted by information known by Experian or reasonably available to Experian.

166.  When Experian voluntarily procured and reported Plaintiff's bankruptcy information, it/ had an obligation to follow reasonable procedures to ensure it reported the bankruptcy discharge and its effect(s) with maximal accuracy.

167.  Experian received notice of Plaintiff's bankruptcy discharge through public records, its own files, and information provided by data furnishers.

168.  Individual furnishers of account information also notified Experian of Plaintiff's bankruptcy, as evidenced by other tradelines in Plaintiff's consumer report that are labeled included and discharged in bankruptcy.

169.  Experian had actual knowledge of Plaintiff's bankruptcy and Discharge

Order, as evidenced by the information it published in Plaintiff's consumer reports, including Plaintiff's bankruptcy case number, court, date of filing, and date of discharge.

170.   Experian also had actual knowledge that Account2 was discharged in Plaintiff's bankruptcy in July 2019, as evidenced by the fact Experian reported the status of Account2 as discharged in bankruptcy.

171.   But despite knowledge of Plaintiff's bankruptcy, Experian inaccurately reported Account 1, which predated Plaintiff's Chapter 7 Bankruptcy, with a status other than "discharged in bankruptcy."

172.   Experian also inaccuracy reported Account 2 with a negative payment history in July 2019, despite knowing the Account was included and discharged in Plaintiff's bankruptcy and that Plaintiff filed his bankruptcy in April 2019.

173.   Experian knew or should have known of its obligations under the FCRA, especially those pertaining to the reporting of pre-petition debts.

174.   These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and exemplified in prior cases involving Experian from which Experian is on notice of its unreasonable procedures concerning the reporting of discharged debts.

175.   Additionally, Experian possesses or could easily obtain substantial

written materials that detail CRAs' duties and obligations under the FCRA, including those arising after a consumer files for Chapter 7 Bankruptcy.

176.   Despite knowledge of these legal obligations, Experian willfully and knowingly breached its duties in violation of 15 U.S.C. § 1681e(b). Accordingly, Experian deprived Plaintiff of Plaintiff's rights as a consumer under the FCRA.

177.   Experian violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file and consumer reports.

178.   Experian also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Equifax knew or should have known the information it was reporting is inaccurate, or otherwise contradicted by information known by Experian, reported to Experian, or reasonably available to Experian.

179.   Even after Plaintiff notified Experian of the inaccurate information it included in Plaintiff's credit file regarding Account 1, Experian still reported Account 1 with a payment status of "charge-off" and failed to report that Account 1 had been discharged in Plaintiff's bankruptcy, despite having notice that the Account was discharged, and the ability to independently confirm the information detailed in Plaintiff's dispute.

180.   Experian therefore further failed to follow reasonable procedures, as 15

U.S.C. § 1681e(b) requires, by failing to independently verify that Account1 was discharged following Plaintiff's dispute, which information is reasonably available from the same sources Experian procures consumer bankruptcy information.

181.   When a consumer disputes the accuracy or completion of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

182.   When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

183.   Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

184.   Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Experian violated the FCRA by failing to perform a reasonable reinvestigation of the disputed information even after

Plaintiff notified it of its inaccurate reporting of Account 1.

185.   Experian's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

> ii.Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

> iv.Failing to consider all relevant information while investigating Plaintiff's dispute.

> v.Failing to include all relevant information when notifying Chrysler Capital of Plaintiff's dispute.

186.   Instead of reasonably reinvestigating Plaintiff's dispute, Experian did not respond to Plaintiff's dispute and continued to report the discharged Account 1 with a payment status of "charge-off" and no indication that Account 1 had been discharged in Plaintiff's bankruptcy.

187.   Experian's acts, as described above, were done willfully and knowingly; or, alternatively were negligent.

188.   Experian's inaccurate reporting damaged Plaintiff's creditworthiness.

189.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Experian inaccurate reporting of Account1 and Account2.

190.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, loss of sleep, embarrassment, and anxiety.

191.   Experian is a direct and proximate cause of Plaintiff's damages.

192.   Experian is a substantial factor in Plaintiff's damages.

193.   Therefore, Experian is individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VII.   COUNT III
### Chrysler Capital
### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)

194.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

195.   The FCRA requires that upon receipt of a consumer's dispute from a CRA, furnishers of information like Chrysler Capital, conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

196.   Chrysler Capital knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgated by the Federal Trade Commission, and detailed in case law.

197.   Additionally, Chrysler Capital possesses or could easily obtain substantial written materials that detail its duties as a furnisher under the FCRA. Despite knowing these legal obligations, Chrysler Capital acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

198.   Plaintiff disputed the Chrysler Capital tradeline through Equifax and Experian.

199.   Thereafter, the consumer reporting agencies forwarded Plaintiff's disputes to Chrysler Capital, notifying Chrysler Capital that Plaintiff was disputing the information it had furnished about Account1.

200.   Chrysler Capital received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge necessary to report Account1 accurately.

201.   Chrysler Capital continued to furnish inaccurate information about Plaintiff to Experian, even though Chrysler Capital possessed all relevant information about Accoun1 and the inaccuracy that Plaintiff disputed.

202.   The inaccurate Chrysler Capital Account materially and adversely

affects Plaintiff's credit standing.

203.   On at least one occasion within the past two years, by example only and without limitations, Defendant Chrysler Capital violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Experian.

204.   Chrysler Capital violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

   (a) Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

   (b) Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

   (c) Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

   (d) Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

   (e) Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all

consumer reporting agencies concerning the inaccurate information

disputed by Plaintiff;

(f) Willfully and negligently continuing to furnish and disseminate

inaccurate credit, account and other information concerning the

Plaintiff to the consumer reporting agencies despite actual knowledge

of the falsity of the reported information; and

(g) Willfully and negligently failing to comply with the requirements for

furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

205.  Chrysler Capital unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

206.  Chrysler Capital's acts, as described above, were done willfully and knowingly; or, alternatively were negligent.

207.  Chrysler Capital's inaccurate reporting damaged Plaintiff's creditworthiness.

208.  Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Chrysler Capital's inaccurate reporting.

209.  Plaintiff also suffers interference with daily activities caused by other

harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, loss of sleep, embarrassment, and anxiety.

210.   Chrysler Capital is a direct and proximate cause, as well as a substantial factor in causing damages and harm to Plaintiff.

211.   Consequently, Chrysler Capital is liable to Plaintiff for the full amount of statutory, actual and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## VIII.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)     Declaratory judgment that Defendants violated the FCRA;

(b)     An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)     Costs   and   reasonable   attorneys'   fees   pursuant   to   15   U.S.C.   §

1681n(a)(3) and § 1681o(a)(2); and

(f)     Such other and further relief as this Honorable Court may deem just and

        proper, including any applicable pre-judgment and post-judgment

        interest, and/or declaratory relief.

### IX.   __JURY DEMAND__

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this __ day of May 2022,

By: _/s/Jenna Dakroub_
Jenna Dakroub, GA: 385021
**PRICE LAW GROUP, APC**
8245 N. 85th Way
Scottsdale, AZ 85258
Telephone: (818) 600-5513
Fax: (818) 600-5413
E: jenna@pricelawgroup.com
_Attorneys for Plaintiff,_
_Joseph Smart_